IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AARON SENNE, et al., Individually and on Behalf of All Those Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CHICAGO WHITE SOX, Ltd.,<br><br>    Defendant. | Pending in the U.S. District Court for the Northern District of California<br><br>Case No. 3:14-cv-00608-JCS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM CHICAGO WHITE SOX, LTD. AND TO TRANSFER THIS MOTION TO THE NORTHERN DISTRICT OF CALIFORNIA**

Pursuant to Federal Rule of Civil Procedure 45, Plaintiffs respectfully move this Court to compel Chicago White Sox, Ltd., (the "White Sox") to produce documents in response to Plaintiffs' subpoena duces tecum, and to transfer this motion to the Northern District of California, where the underlying action is pending.

The White Sox possess documents that are essential to the prosecution of Plaintiffs' wage-and-hour action pending in the Northern District of California, *Senne, et al. v. Office of the Commissioner of Baseball, et al.*, (Case No. 3:14-cv-00608) (N.D. Cal.), which claims that Major League Baseball and its franchises fail to pay minimum wage and overtime to minor league baseball players. Plaintiffs in *Senne* include former minor league baseball players who worked for the White Sox and have claims pending against Major League Baseball for the work performed while employed by the White Sox. As a result, the White Sox possess documents such as work schedules, payroll information, and

1

policies that are essential to the prosecution of the underlying case. In fact, the White Sox itself was a defendant in the *Senne* action until it was recently dismissed without prejudice due to lack of personal jurisdiction.

Plaintiffs respectfully request that this Court transfer this motion to Magistrate Judge Joseph C. Spero of the Northern District of California, who is presiding over the underlying action. Rule 45(f) supports such a transfer for two critical reasons. First, similar subpoenas are pending against seven other MLB franchises who also successfully argued they were not subject to personal jurisdiction in California. Enforcing the subpoenas against the dismissed franchises in the courts where compliance is required would require the filing of eight separate motions to compel in eight separate district courts—which would risk inconsistent rulings. Second, Judge Spero has already issued a discovery order that overlaps with many of the requests in the subpoenas; Judge Spero is familiar with the requests and the need for the information, and his management of the case should be preserved.

In the absence of transfer, this Court should compel production of the requested documents. The requests all seek discoverable information, and Plaintiffs have offered numerous compromises to alleviate any perceived burdens. The White Sox and other dismissed franchises have refused to engage in reasonable meet-and-confer discussions over these compromises.

## BACKGROUND

Plaintiffs in the underlying class action are 43 former minor league baseball players who were employed by the Office of the Commissioner of Baseball ("MLB"), former-Commissioner Selig, and all 30 of MLB's franchises. *Senne, et al. v. Office of the Commissioner of Baseball, et al.* (Case No. 3:14-cv-00608) (N.D. Cal.) (Dkt. 382). Plaintiffs allege that MLB and all of its franchises have ignored basic wage-and-hour requirements when compensating their minor leaguers by, among other things,

failing to pay minor leaguers any wages during certain required work periods like spring training, failing to pay the requisite minimum wage during the minor league season, and failing to ever pay overtime wages even though minor league players often work more than 40 hours per week. *Id.* ¶¶ 568–80. The claims include both individual claims and class claims.

All 30 of MLB's franchises were at one time defendants in the underlying action. *Id.* At least one of the 43 Plaintiffs worked for each of the 30 MLB franchises—including the White Sox. *Id.* Eleven of the MLB franchises moved to dismiss for lack of personal jurisdiction. (*Senne*, Dkt. 115). General discovery had not been stayed, so Plaintiffs served all 30 MLB franchises with requests for the production of documents on November 24, 2014. Yet Plaintiffs agreed that those defendants who had moved to dismiss for lack of personal jurisdiction would not be required to respond to the document requests until after the court resolved the personal jurisdiction motion.

On May 20, 2015, the court denied the personal jurisdiction motion with respect to three MLB franchises, but it granted the motion—without prejudice—with respect to eight franchises: the White Sox, Atlanta Braves, Tampa Bay Rays, Washington Nationals, Philadelphia Phillies, Boston Red Sox, Baltimore Orioles, and Cleveland Indians. (*Senne*, Dkt. 379, at 105).

The May 20 order, however, did not dismiss any Plaintiffs. Plaintiffs who were employed by the dismissed franchises remain in the case, and they still have live claims for the work performed on behalf of the dismissed franchises—including the White Sox—against MLB and Mr. Selig. Thus, even though some of the MLB franchises have been dismissed, Plaintiffs still require documents from the White Sox and the other dismissed franchises because work performed on behalf of the White Sox and the other dismissed franchises remains at issue. Plaintiffs therefore served these dismissed franchises with subpoenas to produce documents pursuant to Rule 45.

Plaintiffs first attempted to serve these subpoenas informally on June 3, 2015. In the *Senne* action every defendant has the same counsel—Proskauer Rose, LLP. Seven of the eight dismissed franchises (including the White Sox) also used the same Proskauer Rose attorneys as counsel in the underlying action. Yet counsel at Proskauer Rose stated that they were not authorized to accept service of the subpoenas, (Broshuis Decl., Exh. C, June 11, 2015 email), requiring Plaintiffs to formally serve the subpoenas at additional expense and further delay.

During the week of June 29, 2015, the same Proskauer Rose attorneys responded to the subpoenas on behalf of all the dismissed franchises except the Baltimore Orioles. (Broshuis Decl., Exh. D, Response from White Sox; *see also* Broshuis Decl. ¶ 5). They refuse to produce a single document, and their responses all contain the same boilerplate objections to each request. *Id.*

Plaintiffs attempted repeatedly to meet and confer with counsel for the White Sox and other dismissed franchises. Plaintiffs even provided a lengthy letter narrowing most of the requests and proposing numerous compromises. (Broshuis Decl., Exh. E, July 3, 2015 letter from G. Broshuis). On July 31, 2015, counsel for the White Sox confirmed that they would not meet and confer over the offered compromises, (Broshuis Decl., Exh. F, July 31, 2015 letter from E. Bloom), even though Plaintiffs have indicated a willingness to discuss any "individual variances that need to be discussed on a per club basis." (Broshuis Decl., Exh. G, July 24 Broshuis email).

The parties have previously engaged in months of negotiations relating to the permissible scope of discovery upon MLB franchises in this case. The court in the *Senne* action has already heard and decided a discovery motion regarding the requests for production of documents served in the underlying action. (*Senne*, Dkt. 419, Broshuis Decl., Exh. B). On July 13, 2015, the court ordered the defendants to produce class discovery such as pay data and roster moves, and he also ordered production of documents going back to 2008. *Id.* The court further ordered the parties to work out a

4

phased schedule for producing documents related to the seasonal and amusement exemption under some laws at issue in the case. *Id.*

The requests in the Rule 45 subpoenas overlap with the requests for production of documents previously served on the White Sox and the other franchises. (Broshuis Decl., Exh. A; *see also* Broshuis Decl. ¶ 3). The subpoenas, however, contain approximately 25% fewer requests than the original requests for production in the underlying action. (Broshuis Decl. ¶ 3). The requests in the subpoenas and the dismissed franchises' responses implicate some of the same issues decided by the court in the underlying action, including the propriety of class discovery involving pay data and roster moves, the timeframe for production, and documents related to the seasonal and amusement exemption. *Id.* ¶ 4.

## ARGUMENT

**I.       This Motion Should Be Transferred to the Northern District of California.**

After the 2013 amendments to Rule 45, subpoenas now issue from the court of the underlying action. R. 45(a)(2). Although the court where compliance is sought typically enforces a subpoena, Rule 45(f) allows transfer of a motion to compel to the issuing court in exceptional circumstances. The 2013 Advisory Committee note to Rule 45(f) provides the following guidance:

> In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, *as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts*. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.

(Emphasis added).

Courts have repeatedly transferred motions under Rule 45(f) when the subpoena falls within the advisory committee's guidance. *See Moon Mountain Farms, LLC v. Rural Cmty. Ins. Co.*, 301 F.R.D.

426, 430 (N.D. Cal. 2014) (collecting and discussing cases finding exceptional circumstances); *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Electronics, Inc.*, No. 14 C 3731, 2014 WL 2808984, at *2 (N.D. Ill. June 20, 2014) (transferring motion to avoid disrupting management of the underlying action); *Elliot v. Mission Trust Servs., LLC*, No. A-14-CV-972-LY, 2014 WL 7157156, at *2–3 (W.D. Tex. Dec. 12, 2014) (transferring to avoid risk of inconsistent rulings and disruption of case management).

Here, the factors in the advisory committee's guidance are clearly present, so this Court should transfer the motion to the judge presiding over the *Senne* action, Judge Spero. The same issues will inevitably arise in multiple districts because, as stated above, Plaintiffs issued the same subpoenas to eight identically situated MLB franchises, and seven are represented by the same law firm and provided identical responses. Without a transfer under Rule 45(f), Plaintiffs will be forced to file eight separate motions to compel involving identical issues in eight separate district courts—which would be grossly inefficient and raise the risk of inconsistent rulings. Indeed, the dismissed franchises have already seized on this issue in their refusal to meet and confer, which has already delayed the proceedings. *Elliot*, 2014 WL 7157156, at *2–3 (transferring when related issues were present in another subpoena in another district and in the issuing court of the underlying action).

Also, the *Senne* court has already issued rulings on the scope of discovery against MLB franchises. On July 13, 2015, Judge Spero ordered the defendants to produce class discovery such as roster moves and payroll information, and he ordered the defendants to produce documents going back to 2008. (*Senne*, Dkt. 419). The court also directed the parties to work out a phased schedule for producing documents related to the seasonal and amusement exemption. *Id.*

The requests in the Rule 45 subpoenas to the White Sox and other dismissed franchises (described in more detail below) overlap with Judge Spero's July 13 order. *See id.* Plaintiffs seek discovery related to named plaintiffs' and class members' wages and roster moves; seek a production

6

timeframe dating to 2008; and seek discovery related to the seasonal and amusement exemption. Since the court in the underlying issue has already ruled on issues presented by this motion, a transfer would avoid the risk of inconsistent rulings, ensure efficient handling of this dispute, and avoid interrupting the underlying court's management of the case.

Lastly, there will be no burden to the White Sox since they are represented by same counsel as counsel to defendants in the underlying action. There would be no added expense from the transfer; instead, the transfer would likely save the White Sox money since any oral argument on this motion can likely be coupled with other hearings in the underlying action where their counsel will already be present. *See Moon Mountain Farms*, 301 F.R.D. at 430 (rejecting argument that subpoenaed party would be burdened due to added expense). Transfer would therefore only result in significant benefits and efficiencies while not adding any burden on the White Sox. Moreover, the White Sox could again become defendants in the underlying action since their dismissal was without prejudice and the jurisdictional defects can be cured at a later time.

In sum, this motion is the paradigm for transfer to the issuing court where the underlying action is pending. The Court should do so to prevent further delay and to avoid the risk of inconsistent rulings in multiple district courts.

## II.     The White Sox Should Be Compelled to Produce Documents.

Rule 45 permits Plaintiffs to serve a subpoena commanding a non-party to produce designated documents and electronically stored information in its possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). The subpoenaed non-party is then subject to the "same scope of discovery as that person would be as a party to whom a request for documents and other materials is addressed pursuant to Rule 34." Wright & Miller, 9A Fed. Prac. & Proc. Civ. § 2452 (3d ed.); *accord Silverstein v. Penguin Putnam, Inc.*, No. 01 CIV. 309, 2006 WL 2506363, at *2

(S.D.N.Y. Aug. 29, 2006) ("The scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules," quoting Rule 45 Advisory Committee Note to 1970 Amendment); *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 8:05-cv-119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[I]t is well settled that the scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.").

Rule 26 authorizes expansive discovery of any relevant, non-privileged information. *See* R. 26(b). Information is relevant if it has any tendency to make a fact that is of consequence to the litigation more or less probable than it would be without the information. Fed. R. Evid. 401. Under Rule 26(b)(1), "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

If a subpoenaed party fails to respond or produce documents, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(i). Because this Court is the district where compliance is required for the White Sox, it may compel discovery for failure to obey the subpoena without adequate excuse. *See* Fed. R. Civ. P. 45(e). "Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome." *Schoolcraft v. City of New York*, No. 10 Civ. 6005, 2012 WL 2161596, at *2 (S.D.N.Y. June 14, 2012).

The subpoena, (Broshuis Decl., Exh. A), seeks documents that are imperative to the prosecution of the underlying wage-and-hour action. As detailed in Plaintiffs' July 3 letter, Plaintiffs have offered numerous compromises that have narrowed the requests and lessened any perceived burdens. (Broshuis Decl., Exh. E). Plaintiffs will accept exemplars of many types of documents, as detailed below. Plaintiffs will also seek to obtain documents from MLB or other parties to the *Senne*

8

action and will avoid duplicative productions. But Plaintiffs have yet to receive such documents from MLB or other parties, so until they do, Plaintiffs must enforce every aspect of this subpoena.

*Requests 1 & 2.* These requests seek rules and policies governing the minor league system. Plaintiffs worked as minor leaguers in the dismissed franchises' minor league system, so these rules and policies are highly relevant to the dismissed franchises' work requirements, which will inform the analyses of compensability of activities and hours worked. As policies and rules, the production of such documents will result in very little burden. As with all the requests, Plaintiffs will not seek the rules and policies from the dismissed franchises if MLB or another party can produce them. If the dismissed franchises have unique policies or rules, such as those found in employee handbooks, player guides, and player development handbooks, then the dismissed franchises should be compelled to produce them.

*Requests 3 & 8.* The requests seek the Minor League Uniform Player Contract ("UPC") and associated contract addenda. The UPC and addenda are central to the litigation because they govern the terms of employment, the work and training requirements, and the amount of pay. To establish the standard use of the UPC by the dismissed franchises, Plaintiffs ask that the dismissed franchises provide exemplars of UPCs and contract addenda for each year. By asking for exemplars, any perceived burden is eliminated. Any confidential information may be redacted, and, as with all the requests, any confidentiality concerns are alleviated by the protective order in place in the litigation.

*Request 4.* This request seeks salary scales for minor leaguers and documents discussing the setting or implementation of the salary scales, which, like the UPC and the work policies, is relevant to determining whether the industry complied with wage-and-hour requirements.

*Request 5.* Plaintiffs seek rules and policies for drafting, signing, or hiring minor leaguers, which relate to establishing the employment relationships at issue and the work requirements at issue.

*Requests 6 & 7.* This request seeks policies and rules regarding discipline of minor leaguers and termination of minor leaguers, which again relate to the employment relationships and work requirements at issue, and the compensability of certain activities. These policies will likely be found in employee handbooks or training manuals, so producing them will result in very little burden.

*Request 9.* Plaintiffs seek roster moves in order to ascertain when and where minor leaguers worked, which allows the Court to determine which state's laws apply to what work. Since such moves are likely within a central database, there should be no undue burden.

*Requests 10, 11 & 12.* Request 10 seeks game schedules for minor leaguers for the season, spring training, and instructional leagues. Request 11 seeks other (non-game) schedules, calendars, and agendas for minor leaguers, and Request 12 seeks time records, activity logs, and similar items. These documents will help establish the hours minor leaguers worked and whether the industry is complying with wage-and-hour requirements. Producing game schedules will entail essentially no burden. Plaintiffs previously offered to accept exemplars of other schedules that apply to all of a franchise's minor leaguers, such as certain types of training schedules.

*Request 13.* Plaintiffs seek policies related to per diems and employment-related expenses, which again relate to whether the industry is complying with wage-and-hour requirements. Being policies, there will be no undue burden in producing them.

*Requests 14 & 15.* Plaintiffs seek information regarding travel and other work schedules, and work obligations for minor leaguers. These documents will help establish the hours minor leaguers

worked and whether the industry is compensating the players in accordance with state and federal requirements.

*Requests 16 & 17.* These requests also seek information related to minor leaguers' training obligations. This training is at issue in the lawsuit and will relate to hours worked, compensability of activities, and other issues that will show whether the industry complied with wage-and-hour requirements. By offering to accept exemplars, Plaintiffs have alleviated any perceived burden.

*Request 18.* Plaintiffs seek information regarding restrictions placed on minor leaguers' activities, which relates to establishing the employment relationships and work requirements at issue. By accepting exemplars, Plaintiffs have alleviated any potential undue burden.

*Request 19–21.* These requests seek documents evincing the wages paid to minor leaguers, including when and how much they are paid. These documents obviously relate directly to whether the industry is complying with wage-and-hour requirements. Policies, forms W2, and pay data should be produced (as was ordered in the underlying action).

*Requests 22–24.* Plaintiffs seek documents related to hours worked and wages paid to minor leaguers. These documents obviously relate directly to whether the industry is complying with wage-and-hour requirements. Plaintiffs offered to accept player files for named Plaintiffs and opt-ins employed by the dismissed franchises. Exemplars of paystubs and pay data for class members should also be produced (as was ordered in the underlying action).

*Requests 26 & 27.* Request 26 seeks information about bonuses paid to minor leaguers. Request 27 seeks policies related to the housing of minor leaguers. This information relates to establishing the employment relationships and work requirements at issue, and to establishing whether the industry is complying with wage-and-hour requirements at issue. Being policies, there should be very little burden.

*Requests 28 & 30.* These requests seek identification of employees and staff involved in the minor league operations. This information shows the supervisors of the minor leaguers and identifies possible witnesses. To alleviate any perceived burden, Plaintiffs will accept either organizational charts or media guides.

*Request 29.* Plaintiffs seek to know the minor league affiliates of the Rule 45 Franchises for each year. Given that the affiliates sometimes change, Plaintiffs require this information because it demonstrates the worksites for minor leaguers. The nature of this Request will result in very little burden.

*Requests 31–35.* These requests relate to the seasonal and amusement exemption that defendants raised as a defense under some laws at issue in the underlying action. Defendants continue to assert the exemption as a defense to claims involving work performed by a minor leaguer while employed by the dismissed franchises, so Plaintiffs require this information to rebut the defense. Plaintiffs have offered to meet and confer with the dismissed franchises in an attempt to alleviate any perceived burdens. As the court in the underlying action directed, it might be possible to adopt a phased production schedule for information related to this defense.

*Request 36.* Plaintiffs seek relevant documents and communications concerning minor leaguers' salaries, which are central to establishing whether the industry is willfully violating wage-and-hour laws. To eliminate any perceived burden on the dismissed franchises, Plaintiffs offered to limit this request to salary scales and guidelines and associated memoranda, meaning that there will be no need to search emails. This proposal would greatly alleviate any perceived burden.

*Requests 37 & 39.* Plaintiffs seek information related to compliance with minimum wage and overtime laws, which also relates to whether the industry is willfully violating wage-and-hour laws. Plaintiffs previously offered to discuss ways to alleviate any perceived burdens.

*Request 38.* This request concerns public comments made by the dismissed franchises' employees about the lawsuit. If the franchises' employees made comments about the lawsuit, then those comments are relevant to whether the industry is complying with wage-and-hour laws.

*Request 40.* Plaintiffs seek information related to their quantum meruit claims, which involve the value of the services provided by minor leaguers. Thus, they are directly related to a claim in the case.

*　　　　*　　　　*　　　　*

In sum, all of Plaintiffs' requests in the subpoena seek information that is reasonably calculated to lead to the discovery of admissible evidence. For most requests, Plaintiffs have already offered substantial compromises to reduce any perceived burdens. (Broshuis Decl., Exh. E). For the others, Plaintiffs have expressed a willingness to discuss ways to alleviate any perceived burdens. The dismissed franchises have refused to even meet and confer over them.

Instead of meeting and conferring, the dismissed franchises continue to rely on improper and boilerplate objections. They maintain that different district courts might have different laws on certain, unidentified issues. But Plaintiffs offered to discuss these nuances during a meet-and-confer session, and the dismissed franchises refused to engage us.

## CONCLUSION

From the time Plaintiffs attempted to serve these subpoenas, the dismissed franchises have engaged in improper gamesmanship that has delayed the production of documents and threatens to undermine the schedule in the underlying action. To avoid the risk of inconsistent rulings and upsetting the case management of the underlying case, this motion should be transferred to the court of the underlying action. If the motion is not transferred, then Plaintiffs request that the Court compel the production of the documents requested in the subpoena within 30 days.

Dated: August 7, 2015

Respectfully submitted,

*/s/ John A. Libra*
Stephen M. Tillery
stillery@koreintillery.com
Garrett R. Broshuis
gbroshuis@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 62101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

George A. Zelcs (*pro hac vice*)
gzelcs@koreintillery.com
John A. Libra
jlibra@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (314) 241-3525

Bruce L. Simon (Bar No. 96241)
bsimon@pswlaw.com
Benjamin E. Shiftan (Bar No. 265767)
bshiftan@pswlaw.com
**PEARSON, SIMON & WARSHAW LLP**
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

Daniel L. Warshaw (Bar No. 185365)
dwarshaw@pswlaw.com
Bobby Pouya (Bar No. 245527)
bpouya@pswlaw.com
**PEARSON, SIMON & WARSHAW LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104

*Plaintiffs' Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

      I certify that on August 7, 2015, the foregoing Memorandum in Support of Motion to Compel was served on counsel for the CHICAGO WHITE SOX, Ltd. at Proskauer Rose, LLP in New York, New York, via U.S. mail, and via electronic mail on:

| | |
|---|---|
| Howard L. Ganz | D. Gregory Valenza |
| Elise M. Bloom | SHAW VALENZA LLP |
| Adam M Lupion | 300 Montgomery Street, Suite 788 |
| Neil H. Abramson | San Francisco, California 94104 |
| Rachel Santoro | Tel: (415) 983-5960 |
| PROSKAUER ROSE LLP | Fax: (415) 983-5963 |
| Eleven Times Square | gvalenza@shawvalenza.com |
| New York, NY 10036-8299 | |
| Telephone: 212-969-3000 | |
| Facsimile: 212-969-2900 | |
| hganz@proskauer.com | |
| ebloom@proskauer.com | |
| alupion@proskauer.com | |
| nabramson@proskauer.com | |

Enzo Der Boghossian
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, CA 90067
Telephone: 310-557-2900
Facsimile: 310-557-2193
ederboghossian@proskauer.com

                                                        */s/ John A. Libra*
                                                         John A. Libra